# ROGERS *vs.* WHITE.

Where one of two tenants in common of a quantity of boards shipped them for sale to his own factors, in a distant port, who sold them on credit, in the usual manner, taking a note therefor payable to themselves, and passed the amount to the credit of their principal, who was largely their debtor; and who paid over half the proceeds of sale to his co-tenant; and the purchaser became insolvent before the maturity of his note; after which the factors and their principal settled a further account, in which no notice was taken of this bad debt; nor was it charged back to the principal till the settlement of a third account, more than eight months after the maturity of the note and the insolvency of the maker; of whom payment could not, by any means, be obtained; at which settlement a large balance, due to the factors, was carried to a new account, and still remained unpaid;—and the principal gave no notice of these events to his co-tenant till sometime after the last of them had transpired;—it was *held*—that the acceptance of the moiety originally paid over to the co-tenant, was a ratification, by him, of the act of the other in making the shipment and consignment for sale;—that here was sufficient diligence, both on the part of the factors, and of the consignor;— that the latter was justly charged with the whole sum by his factors;—and might well recover back from his co-tenant the moiety he had paid over to him.

In this case, which was *assumpsit* for money had and received, it appeared that the plaintiff and defendant were owners in common of a quantity of boards, which the plaintiff, in *June* 1825, shipped to *Boston,* consigning them to *Peters, Pond & Co.* for sale. They sold them on the 12th of *July* 1825, to one *Pike,* then in good credit, for $287, taking his promissory note for the amount, payable to themselves in three months, with grace and interest. In so doing they gave the usual term of credit, and pursued the usual course of business. Upon this sale they credited the net proceeds in account with the plaintiff, between whom and themselves were large dealings. The account containing this credit was settled *Aug.* 31, 1825, and a balance of $57, then due to the plaintiff, was carried to a new account. Two or three weeks before *Pike's* note arrived at maturity he failed; and the holders, using all due diligence on their part, have been unable to obtain payment from him. On the 30th of *Nov.* 1825, another account was settled between *Peters, Pond & Co.* and the plaintiff, and a large balance due them was carried to a new

account; no notice being taken of *Pike's* note in this settlement. On the 27th of *June* 1826, another account was settled between them, in which the amount of *Pike's* note was charged to the plaintiff, and a larger balance again carried to a new account.   A further account was settled between them *Sept.* 16, 1826, the balance of which was still against the plaintiff, and was carried forward as before.   It did not appear that this last balance had been paid, the plaintiff having become insolvent.   And there was no evidence of notice to the plaintiff of the failure of *Pike*, except what arose from the settlement of the account of *June* 1826.

It further appeared that in *Sept.* 1825, the plaintiff paid over to the defendant his half of the proceeds of the boards; that in the same *September*, and again on the 27th of *May* 1826, other accounts were settled between them, in which no notice was taken of the item in controversy; and that the plaintiff, within three months before the commencement of this suit, which was *May* 22, 1827, often requested the defendant to refund the money thus paid him; which he refused.

Upon this evidence *Weston J.* before whom the cause was tried, instructed the jury that the boards being for sale, the plaintiff having an interest in them, having consigned them to a competent factor, and having caused them to be sold in the usual course of business, and upon the usual credit; to which the defendant made no objection; the plaintiff was under no obligation to sustain alone the entire loss, which was not imputable to any default or negligence on his part; that *Peters, Pond & Co.* having paid a sum of money to the plaintiff under the expectation of being reimbursed from *Pike's* note, and this expectation having failed from causes for which they were not responsible, they had a right to reclaim it; and that their having forborne to do this for several months, till they had no further hope of obtaining it from *Pike*, was no injury to the plaintiff; that he was bound, in good faith, to refund the money to his factors; and that if he did not call upon the defendant so early as he might have done, for money paid him before he knew of the failure of *Pike*, this, being an injury to himself and not to the defendant, constituted no sufficient defence to the action.   Whereupon the jury return-

ed a verdict for the plaintiff, which was taken subject to the opinion of the court upon the correctness of the instructions thus given.

*Sprague, Kent* and *Rogers,* for the defendant, maintained—1st, that the plaintiff, being only a tenant in common, and not a partner, with the defendant, had no right to sell the goods owned in common. For such a tenancy is created involuntarily, by operation of law; and not by the mere act of the parties themselves, as is always the case of partnership; and therefore a sale of the property can only be by the joint act of both. *Co. Lit.* 189 *a. Johnson v. Robinson,* 3 *Mason,* 141; *Rice v. Austin,* 17 *Mass.* 197.

2d. The plaintiff, having placed the property beyond the control of the defendant, and converted it to his own use, became in fact the purchaser of the defendant's moiety, and responsible to him for its value, from the moment he placed it in the hands of his own creditors in *Boston. Brigham v. Eveleth,* 9 *Mass.* 538; *Jones v. Harraden, ib. in notis; Hemmenway v. Hemmenway,* 5 *Pick.* 389; *Amory v. Hamilton,* 17 *Mass.* 103. And so the plaintiff must have regarded it, by his holding no intercourse with the defendant on the subject till long after he had been made debtor to his own factors for the loss. The silence of the defendant proves nothing against him, he having no knowledge of the facts. *Smith v. Lascelles,* 2 *D & E.* 189; *Rathbone v. Warren,* 10 *Johns.* 595.

3d. And if it were not so; yet the plaintiff was not liable to refund to the money to his factors, because of their neglect of seasonable notice to him of the facts which had transpired. It was a payment in his own wrong. *Simpson v. Swan,* 3 *Campb.* 292; *Jameson v. Swainston,* 2 *Campb.* 546; *Clark v. Moody,* 17 *Mass.* 153; *Cheever v. Smith,* 15 *Johns.* 276; *Paley on Agency,* 27, 28, 37, 38.

4th. The money having been voluntarily paid by the plaintiff to the defendant, with knowledge of all the existing circumstances, and no seasonable notice having been given to the defendant of the failure of *Pike,* it cannot now be recovered back. 5 *Taunt.* 143; *Bilbee v. Lumley & al.* 2 *East,* 470; *Stevens v. Lynch,* 12 *East,* 38.

*J. McGaw,* for the plaintiff.

MELLEN C. J. delivered the opinion of the Court at the ensuing July term in *Waldo*.

This is an equitable action; and the sum demanded is claimed on the ground that in equity and good conscience the defendant ought not to retain it. The action is resisted on several grounds.

1. It is contended that the parties not being partners in trade, *Rogers* had no power to bind *White* by his contracts; and therefore could not sell *White's* share of the lumber without his authority; this principle is not denied by the plaintiff's counsel.

2. It is contended that there was no authority given, and that there is no proof of any; and that the plaintiff must be considered as the purchaser of the defendant's half of the boards; and, of course, that any loss sustained on the sale is the proper loss of *Rogers*. The sale of the boards by *Peters, Pond & Co.* was on the 12th of *July*, 1825, on a credit of three months, and payment secured by the note of *Pike* the purchaser. And it appears that in *September* following, *Rogers* paid over to *White* his half of the proceeds of the boards; the whole amount of the proceeds having been credited to *Rogers* by *Peters, Pond & Co.* in their account, settled *August* 31, 1825. This fact completely negatives all pretence or presumption that *Rogers* was a purchaser of *White's* half of the boards; and we think it amounts to a distinct recognition by *White* of the authority of *Rogers* to take and consign the defendant's half for sale, as his agent. In the next place it appears that in the sale of the boards, *Peters, Pond & Co.* gave the usual term of credit and pursued the usual course of business; and that though *Pike* was in good circumstances when the note was given, yet that he failed before its arrival at maturity. Thus far all was correct on their part, and though the note was made payable to them, that circumstance would not have subjected them to liability in consequence of the failure of *Pike. Greely v. Bartlett*, 1 *Greenl.* 172. It now remains to be examined whether their subsequent conduct had amounted to an assumption of the debt, prior to their charging the same to *Rogers*, and thus claiming a return of the sum which they had previously paid to him; or if not, then whether the plaintiff, by his conduct, has lost any right

which he might have had to recover the amount now demanded. It appears that *Peters, Pond & Co.* using all due diligence, have been unable to obtain payment of any part of said note. It has been argued by the counsel for the defendant that the receipt by *White* of payment of his half of the proceeds of the boards, can amount to a recognition of those facts only which were then made known to him ; and that it does not appear that when the payment was made to him in *Sept.* 1825, he knew that the boards had been sold on credit. Still it was an acknowledgment of the plaintiff's authority as agent to consign the property for sale, and thus *Peters, Pond & Co.* became, in effect, agents of the defendant as well as the plaintiff ; and they having acted faithfully in the sale, and according to usage as to the terms of credit, the recognition of the defendant must be considered general in relation to those facts which had at that time taken place.

3. Our third inquiry is whether *Peters, Pond & Co.* had by their conduct rendered themselves liable for the loss. On this point the facts are, that *Pike's* failure was about the 1st of *October* 1825 ; that *November* 30, 1825, an account was settled between them and *Rogers,* in which no notice was taken of the *Pike* note, though this was two months after *Pike's* failure ; and in addition to this it does not appear that any notice of the failure was given to *Rogers* till *June* 1826, when another account was settled in which they charged the plaintiff with the amount of the note. These facts are relied on as proving that they had assumed the responsibility themselves, and considered the debt their own and of course had no right to charge the amount of the loss to *Rogers* ; several cases have been cited in support of this position. In *Amory v. Hamilton,* 17 *Mass.* 103, it appears that goods were consigned by *Hamilton* to *Amory* for sale, who employed *Hayward,* an auctioneer, to sell them ; and on sale he charged them in account to purchasers at the usual rate ; and that an account was open with those purchasers, and that the balance on his books was generally in their favor ; and when *Hayward* failed, there was nothing due to him from the purchasers of *Hamilton's* goods. The sale appears to have been in *October,* an account of which was rendered on the 22d of the month ; and on the 22d of

*November, Hayward,* who was then in good credit, gave his note to the plaintiff, with an indorser, for the proceeds of the defendant's goods; but gave the defendant no notice that such note had been taken, till *Dec.* 28, about which time *Hayward* and the indorser both failed. The note was of no value. The plaintiff having paid the defendant's bills which had been drawn in anticipation of funds arising from the sale of the goods, brought the action to obtain reimbursement. The Chief Justice observed that the cause had been argued rather upon the ground that the verdict was against evidence, than upon any matter of law arising at the trial; that the manner in which *Hayward* managed the business was undoubtedly wrong; for that he was not authorised to deprive the owner of the goods of the responsibility of the purchasers and give his own in lieu thereof; that the plaintiff had notice of that circumstance on the 22d of *November,* but instead of demanding immediate payment or security, he took the note of *Hayward* with the indorser. These circumstances were submitted to the jury and they pronounced it negligence on the part of *Amory*; and the court declined granting a new trial, and entered judgment on the verdict. The negligence in the above case consisted in the discharge of the purchasers from responsibility and the acceptance of the auctioneer's security, without any notice to the defendant till after the failure of the parties to the note. The case in several respects differs from the one at bar. In this, the note of the purchaser was fairly taken according to the common course of business, and his failure occasioned the loss. *Hemmenway v. Hemmenway,* 5 *Pick.* 389, was one in which defendant sold certain land on credit, not being authorised so to do; and the court observed that *stricto jure* he might have been held to have assumed the debt, by taking a note payable to himself; but the cause was submitted to the jury on the ground of fraud or unreasonable delay, and they found for the plaintiff. That case also essentially differs from the present. As to notice by *Peters, Pond & Co.* it appears that an account of sales was settled *Aug.* 31, 1825, with the plaintiff, and more than a month before *Pike's* note became due; and they used all due diligence to obtain a payment; which seems necessarily to imply that this diligence was

Rogers v. White.

used after the failure; because, before that time, they had no right to demand payment or security. It does not appear, from any facts in the case, that the want of earlier notice has been or could have been productive of any injury or inconvenience to any one ; or that *White* has ever questioned the correctness or fairness of the proceedings on the part either of *Peters, Pond & Co.* or of *Rogers*. And in the absence of all such proof, we may fairly presume that the delay on their part was for the purpose of procuring payment of *Pike*, if possible ; but that finding their endeavors vain, they charged the amount of the loss to the plaintiff and gave him notice of it. This loss being attributable to no fault on the part of *Peters, Pond, & Co.* we see no legal objection to the claim they made on *Rogers*, or how he could have successfully resisted it. The payment which they had made by passing the amount of proceeds to the credit of *Rogers* in account, was made under a mistake and an expectation of funds from *Pike's* note, which funds were never realized. The cases of *Bilbee v. Lumley*, and *Stevens v. Lynch*, cited from *East's* reports, were those in which the plaintiffs sought to recover monies paid by them respectively to the defendants under a mistaken opinion of the law ; but with full knowledge of all the facts ; about which there was neither a dispute nor a mistake. The omission therefore of the plaintiff to consult the defendant before he repaid the money to *Peters, Pond & Co.* could not have been any prejudice to the defendant; nor does it now furnish any ground of objection to the plaintiff's right to recover in this action.

4. The fourth objection is that admitting the plaintiff was bound by law to refund to *Peters, Pond & Co.* the sum they had paid to him, and that he rightfully paid it, yet it is contended that by his own conduct and delay he has lost his remedy against the defendant. The payment was made by the plaintiff to the defendant in *September* 1825, as we have before observed, and it appears by the report that the plaintiff frequently called on the defendant to refund it, which he refused to do, and hence the present action was commenced. We do not perceive that the plaintiff has lost any of his rights by this delay and indulgence granted to the defendant since the amount was refunded by the plaintiff to *Peters, Pond & Co.* The delay could be injurious to no one but the plaintiff himself. To the

objection made to his right to recover the money on the ground that he had voluntarily paid it to the defendant, we give the same answer which we have before given in relation to the payment by *Peters, Pond & Co.* to the plaintiff, and the objection to their right to claim a reimbursement on account of the unexpected failure of *Pike.* In both cases the payments were made under similar circumstances of misapprehension. We cannot consider the plaintiff bound to sustain the whole loss ; the defendant, on every principle of justice, ought to bear one half of it. We are all of opinion that there must be

*Judgment on the verdict.*